UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SHELLY MENDONCA, as Personal Representative of the Estate of TRISHA MENDONCA, | ) ) ) | CIV. 12-5007-JLV |
| Plaintiff, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| JORDAN THOMAS WINCKLER and CORPAT, INC., d/b/a ALAMO/NATIONAL CAR RENTAL, | ) ) ) ) | |
| Defendants. | ) ) | |

**INTRODUCTION**

Shelly Mendonca, the mother of Trisha Mendonca and personal representative of Trisha's estate, brings this diversity action alleging a cause of action for wrongful death on behalf of the estate of Trisha arising out of a one-car accident in which Trisha was a passenger and defendant, Jordan Thomas Winckler, was the driver of a motor vehicle rented to him by defendant Corpat, Inc. doing business as Alamo/National Car Rental (hereinafter "Corpat"). <u>See</u> Docket No. 19. Corpat has now filed a motion seeking the entry of summary judgment in its favor. <u>See</u> Docket No. 30. The district court, the Honorable Jeffrey L. Viken, Chief Judge, referred Corpat's motion to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTS

The parties largely agree upon the facts, which are as follows as reflected in the source materials filed by the parties as well as in the parties' statements of material fact.   Disagreements, where applicable, are noted.

On July 28, 2011, defendant Jordan Winckler and Trisha Mendonca arrived at the Corpat car rental desk in the Jackson Hole, Wyoming, airport. See Docket No. 33-2, at 10, 36 (Deposition of Dakotah Dayton); Docket No. 33-3, at 21–22 (Deposition of Jordan Winckler).[1]   They intended to rent a car to travel to Sioux Falls, South Dakota, to attend a family reunion on Mr. Winckler's side of the family.   See Docket No. 33-3, at 21.   On the way out to the airport, Mr. Winckler and Ms. Mendonca shared a small full joint of marijuana.   See Docket No. 33-3, at 24–25.   At the time, both Mr. Winckler and Ms. Mendonca were residents of Wyoming.   See Docket No. 33-3, at 30; Docket No. 33-4, at 4.

On July 28, 2011, Mr. Winckler's right hand was in a removable splint as he had previously fallen on glass and severed three tendons in his wrist that affected his pinky, ring, and middle fingers on his right hand.   See Docket No. 33-3, at 27–28.   Mr. Winckler had recently had surgery to repair the damage to his finger nerves, but he was still recovering.   Id.   In Mr. Winckler's own words, he could use his fingers on his right hand, but he could not do anything "too

---

[1] With regard to the depositions of Dakotah Dayton and Jordan Winckler, Docket entries 33-2 and 33-3, respectively, the court cites to the page number of the deposition—*not* the docket entry page number.

2

crazy" with them.[2]  Id.  Mr. Winckler drove to the Jackson Hole airport himself. See Docket No. 33-2, at 33; Docket No. 33-3, at 24.  His right hand was in the splint during this drive.  See Docket No. 33-3, at 27–28.

The attendant at the Corpat desk who assisted Mr. Winckler was Dakotah Dayton.  See Docket No. 33-2, at 36–37; Docket No. 33-3, at 21.  Mr. Dayton had worked for Corpat for fourteen years since he dropped out of high school in the eleventh grade, starting out washing cars.  See Docket No. 33-2, at 9-11. On July 28, 2011, Mr. Dayton was the manager of the Jackson Hole Corpat office.  See Docket No. 33-2, at 9.

About a week prior to his arrival at the Corpat desk on July 28, 2011, Mr. Winckler had telephoned Mr. Dayton.  See Docket No. 33-2, at 19–20.  The two men were previously acquainted because they had played on the same flag football team together, although the two were not friends and did not socialize with each other aside from playing football together.  See Docket No. 33-2, at

---

[2] Plaintiff asserts that Mr. Winckler had **no** use of his right hand at the time of the accident.  See Docket No. 40, at ¶ 26.  This assertion is not supported by Mr. Winckler's testimony.  See Docket No. 33-3, at 28–29.  Mr. Winckler was asked if he was not supposed to use his hand at all due to his injury and subsequent surgery.  Id. at 28.  He responded:  "No. I was able to start by then to slowly, you know, try to use my fingers.  Nothing too crazy, because the tendons had just been re-fused.  So you know, you don't want to put too much strain on them because they have a possibility of, you know, re [injury]."  Id. at 28–29.

3

12–13, 16, 18--9.[3]   The purpose of Mr. Winckler's phone call was to inquire whether Mr. Dayton could give him a "good price" on a car rental.   Id. at 19–20.

Upon Mr. Winckler's presentation at the Corpat desk, Mr. Dayton observed nothing unusual about Mr. Winckler's appearance or demeanor, in spite of his recent ingestion of marijuana.   See Docket No. 33-2, at 38–40.   Mr. Winckler did not display bloodshot or glassy eyes.   Id. at 39.   His behavior was normal. Id.   Mr. Dayton had no knowledge, nor observed anything to indicate, that Mr. Winckler had ingested marijuana immediately prior to arriving at the Corpat desk.   See id.; Docket No. 33-3, at 26–26.      Moreover, Mr. Dayton did not know Mr. Winckler used marijuana in general.   Docket No. 33-2, at 19. Mr. Dayton testified that if he had known that Mr. Winckler was impaired, he would not have rented a vehicle to him.   See Docket No. 33-2, at 39. Mr. Dayton was familiar with the effects of marijuana on its users.   Id. at 18–19.

Although Mr. Dayton did observe the removable splint on Mr. Winckler's right hand, he did not make inquiry of Mr. Winckler to ascertain how he had injured his hand or what the functionality of his hand was at the time of the car rental.   See Docket No. 33-2, at 37.   Mr. Dayton testified that he knew Mr. Winckler had driven himself out to the airport with the splint on, so Mr. Dayton assumed that Mr. Winckler was capable of driving despite the

---

[3] Plaintiff asserts that Mr. Dayton and Mr. Winckler were friends.   See Docket No. 39, at ¶ 2.   This was specifically denied by both men—Mr. Winckler did not even know Dakotah's last name.   See Docket No. 33-3, at 21.

apparent injury to his right hand.   Id. at 38.   The Corpat car was rented to

Mr. Winckler.   See Docket No. 33-2, at 22, 31, 44; Docket No. 33-3, at 22.

Mr. Dayton verified that Mr. Winckler had a valid driver's license.   See

Docket No. 33-2, at 22; Docket No. 33-3, at 22.   In filling out the rental car

agreement, Mr. Winckler represented to Mr. Dayton that he had his own

automobile liability insurance.   See Docket No. 33-2, at 25–26.   Mr. Dayton

offered Mr. Winckler insurance coverage through Corpat, but Mr. Winckler

declined the Corpat insurance.   Id.   Mr. Dayton did not ask Mr. Winckler to

show him proof of his personal automobile liability insurance.   Id.   It was

Corpat's policy not to require renters to show proof of insurance.   Id.   In fact,

Mr. Winckler did not have automobile liability insurance at the time he rented

the Corpat vehicle.   See Docket No. 33-2, at 25–27; Docket No. 33-3, at 22.

The vehicle Mr. Dayton rented to Mr. Winckler was a 2011 Chevrolet

Impala, which was almost brand new.   See Docket No. 33-1; Docket No. 33-2, at

41; Docket No. 33-5, at 1.   The Impala had approximately 3,200 miles on it at

the time of the rental.   See Docket No. 33-2, at 41.

After renting the Corpat vehicle, Mr. Winckler and Trisha Mendonca left

Jackson Hole at approximately 5:00 p.m. en route to Sioux Falls, South Dakota.

See Docket No. 33-3, at 23.   The two stopped at least once on the trip to sleep for

a few hours.   Id. at 23–24.   At approximately 6:00 a.m. on July 29, 2011, just

east of Rapid City near Exit 67A on the Interstate 90 exit for Liberty Boulevard at

the Ellsworth Air Force Base, Mr. Winckler lost control of the Corpat rental car. Id. at 37–38.   He testified that he heard a sound like a tire popping immediately before losing control.   Id.   The highway patrol report on the accident suggested that Mr. Winckler fell asleep at the wheel.   See Docket No. 33-7, at 6–7 (South Dakota Highway Patrol Accident Reconstruction Report).   Mr. Winckler denies this.   See Docket No. 33-3, at 37–38, 43–44.   Plaintiff does not suggest that Mr. Winckler lost control of the car due to the injury to his right hand.

The Impala struck a guard rail, became airborne, and then rolled.   See Docket No. 33-3, at 38–0.   Trisha Mendonca, who was not wearing a seat belt at the time, was thrown from the car and died at the scene of the accident.   Id. at 37–39.   Sobriety tests were administered to Mr. Winckler immediately after the accident and he was found to be unimpaired, although it was later determined that he did have cannabinoids in his system.   Id. at 44–46; see also Docket No. 33-5, at 3 (South Dakota Highway Patrol Accident Report); Docket No. 33-7, at 4. Drug paraphernalia was found in the wrecked Impala.   See Docket No. 33-6 (South Dakota Highway Patrol Case Report).   Mr. Winckler testified that he did not smoke any additional marijuana after renting the Impala from Corpat.   See Docket No. 33-3, at 26.

Shelly Mendonca, Trisha's mother, was appointed by a Wyoming state court to act as the personal representative of Trisha's estate.   See Docket No. 19, at ¶ 8.   Shelly is a resident of Wyoming.   Id. at ¶ 3.   Shelly now brings an

action for wrongful death against Mr. Winckler, alleging negligence.   In addition, she brings a claim of negligent entrustment against Corpat, alleging that it was negligent in renting the vehicle to Mr. Winckler on July 28, 2011,[4] in Wyoming based on Mr. Winckler's ingestion of marijuana and his injured hand.[5]   Id. at ¶ 22–28.   Corpat now moves for summary judgment in its favor.   See Docket No. 30.   Both Ms. Mendonca and Mr. Winckler resist, arguing that genuine issues of material fact exist that prevent the issuance of summary judgment in Corpat's favor.   See Docket Nos. 34, 38.

**DISCUSSION**

**A.    Summary Judgment Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party.   See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957

---

[4] The amended complaint states that the entrustment occurred on July 29, but in fact the vehicle was rented on July 28.   See Docket No. 33-1.

[5] Ms. Mendonca does not assert any claim against Corpat based on the condition of the rental car, its tires, or on the basis that Corpat failed to ensure that Mr. Winckler had automobile liability insurance.

(8th Cir. 2010) (per curiam).   Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.   Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.   Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted."   Id. (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93–95 (3d ed. 1983)).   "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

8

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented:   "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

**B.    The Graves Amendment Does Not Preempt Plaintiff's Claim**

Corpat argues that the Graves Amendment, 49 U.S.C. § 30106(a), preempts plaintiff's claim against Corpat.   The Graves Amendment provides as follows:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> > (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
> >
> > (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

See 49 U.S.C. § 30106(a) (2012).

Plaintiff's claim against Corpat is not one of vicarious liability.   Instead, plaintiff asserts that Corpat was itself affirmatively guilty of negligence in renting

9

the vehicle to Jordan Winckler because Corpat knew or should have known that Mr. Winckler was incompetent to drive.   This is a separate, independent basis of negligence asserted against Corpat.   It is not an assertion of liability against Corpat based solely on its derivative liability for Mr. Winckler's negligence. Thus, plaintiff's claim comes within the savings clause of subparagraph two of the amendment.   Accordingly, the Graves Amendment does not preempt plaintiff's claim of negligent entrustment against Corpat.   See Carton v. Gen. Motors Acceptance Corp., 611 F.3d 451, 455–56, 457–59 (8th Cir. 2010) (Graves Amendment preempted plaintiff's claim of vicarious liability, but did not preempt plaintiff's common law claim of negligent entrustment).

## C.   Conflict of Laws

The parties discuss the law of negligent entrustment, assuming that South Dakota law applies.   See Docket Nos. 30-31, 34, 38, 41.   However, the court notes that Mr. Winckler, Trisha Mendonca, and Mr. Dayton were all residents of Wyoming at the time that Corpat rented the vehicle to Mr. Winckler and the rental agreement was entered into in Wyoming.   Thus, the first question presented is whether Wyoming law or South Dakota law applies.

A forum court applies its own conflict of laws rules.   RESTATEMENT (SECOND) CONFLICTS OF LAWS § 6(1) (1971).   Therefore, this court, sitting in diversity, applies the conflict of laws rules of South Dakota.   Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Klaxon Co. v. Stentor Elec. Mfg. Co.,

10

313 U.S. 487, 496 (1941); <u>Penney v. Praxair, Inc.</u>, 116 F.3d 330, 333 n.4 (8th Cir. 1997).   South Dakota formerly employed the *lex loci delecti* choice of law rule in torts, which held that the rights and liabilities which arise out of a tortious occurrence are to be determined by the law where the tort occurred.   <u>See</u> <u>Chambers v. Dakotah Charter, Inc.</u>, 488 N.W.2d 63, 65 (S.D. 1992).   However, in 1992, South Dakota abandoned the *lex loci* rule and adopted the "most significant relationship" approach as described in the Restatement (Second) of Conflicts of Laws.   <u>Id.</u> at 67.   That approach is described as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) [t]he place where the injury occurred,

(b) [t]he place where the conduct causing the injury occurred,

(c) [t]he domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) [t]he place where the relationship, if any, between the parties is centered.

<u>Id.</u> at 68 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971)) ("These contacts are to be evaluated according to their relative importance with respect to particular issue.").   The principles to be considered under § 6 are:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

11

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

    (a) [t]he needs of the interstate and international systems,

    (b) [t]he relevant policies of the forum,

    (c) [t]he relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) [t]he protection of justified expectations,

    (e) [t]he basic policies underlying the particular field of law,

    (f) [c]ertainty, predictability and uniformity of result, and

    (g) [e]ase in the determination and application of the law to be applied.

Id. (quoting RESTATEMENT (SECOND), supra, § 6 (1971)).   The court applies both § 145 and § 6 to the facts of this case.

**1. Section 145 Factors**

In the Chambers decision, the South Dakota Supreme Court applied the law of South Dakota to determine whether the plaintiff was comparatively negligent.   Id. at 68–69.   The facts of that case were that the plaintiff, a South Dakota resident, was a passenger on a bus owned by a South Dakota corporation.   Id. at 63–64.   The bus was chartered in Sioux Falls, South Dakota, to take thirty-five people to a Tae Kwon Do tournament in Arkansas and then back to South Dakota.   Id. at 64.   The plaintiff was injured when she slipped on candy on the floor of the bus while the bus was in Missouri.   Id.   The

plaintiff alleged that the bus company was negligent because its driver had earlier distributed the candy to children on the bus while the bus was still in South Dakota.   Id.

The court concluded that all of the important contacts were with South Dakota and that Missouri had no interest in applying its own comparative negligence law to South Dakota parties.   Id. at 68–69.   Bolstering the court's conclusion was its observation that the laws of both states were easy to apply and that the differences between the two laws were so minor that there would be few differences in results.   Id. at 69.   See also Schmaltz v. W. Horizons Living Ctrs., Civ. No. 10-5032, 2010 WL 4628683, at *11–12 (D.S.D. Nov. 8, 2010) (applying North Dakota law to action claiming negligence by nursing home where contract for nursing home care was entered into in North Dakota, and both the nursing home and the plaintiff were residents of North Dakota at the time the injury occurred).

Likewise, in Selle v. Pierce, the South Dakota Supreme Court applied the law of the state where the majority of the contacts occurred.   Selle v. Pierce, 494 N.W.2d 634 (S.D. 1993).   In that action, Selle, a Nebraska resident, alleged that Pierce had defamed him in a letter written in Nebraska, mailed from Nebraska, and which was written about Selle's participation on a Nebraska committee.   Id. at 635.   The letter was published in South Dakota to one South Dakota resident, and in Nebraska to several members of the committee, who were Nebraska

13

residents.   Id. at 635–36.   Although Selle owned property in South Dakota, licensed his vehicles in South Dakota, and did the majority of his socializing and day-to-day business in South Dakota, the court applied Nebraska law.   Id. at 637.

In so ruling, the court noted that the relationship between Selle and Pierce was centered in Nebraska and the alleged defamation arose out of Selle's participation on a Nebraska committee.   Id.   In addition, the court held that the defamation laws of Nebraska and South Dakota were nearly identical, with the exception of punitive damages.   Id.

In Cates v. Creamer, the Fifth Circuit addressed a choice of law question in the context of a car rental company, Hertz.   Cates v. Creamer, 431 F.3d 456 (5th Cir. 2005).   In that case, Creamer rented a Hertz car in Florida for the purpose of traveling to a family reunion in Texas.   Id. at 458–59.   Under the terms of the rental agreement, Creamer could drive the car anywhere in the United States, but he was obligated to return the car to Hertz in Florida.   Id. at 459.   Creamer then hit Cates' car, injuring Cates.   Id.   A lawsuit was filed in United States District Court for the Northern District of Texas and the court had to decide whether to apply Florida law or Texas law.   Id.

Applying the "most significant relationship" approach of the Restatement (Second) of Conflicts of Laws, which Texas state courts had adopted, the court concluded that Florida law should apply to determine Hertz's liability.   Id. at

14

462–66.   The court held that the relationship between Creamer and Hertz was centered in Florida since that was where the contract was entered into, where Hertz was doing business when the contract was entered into, where Creamer was domiciled, and where the rental car was to be returned at the conclusion of the lease.   Id. at 464–465.   Thus, there was a reasonable relationship between Hertz and Florida.   Id. at 464.   Although Texas was the location of both the injury and the conduct which caused the injury, as well as the plaintiff's domicile, the court held that the interests of Texas would be furthered by the application of Florida law, not frustrated thereby, because Hertz would likely not be held liable for Cates' injuries under Texas law, while it was more likely that Hertz would be liable under Florida law.   Id. at 464–65.   Thus, the interest of Texas in seeing that its injured citizens were compensated for their loss would be furthered by applying Florida law.   Id. at 465.

Applying the factors of § 6 of the Restatement (Second), the court held that the interests of neither Texas nor Florida predominated over those of the other—each state had an interest in having its own law applied.   Id. at 465–66. The court held that Florida's interests were more closely connected to the issue of Hertz's liability, and thus, the § 6 factors did not change the court's conclusion that Florida law should apply.   Id.

Similarly, in Henderson v. Your Kar Express Rentals, Inc., the court held, applying the Restatement's most significant relationship test, that the law of

15

Virginia should apply to a negligent entrustment claim where a Virginia driver rented a car in Virginia and then subsequently caused an accident in Delaware. Henderson v. Your Kar Express Rentals, Inc., No. 06C-03-131, 2009 WL 1900395, at *1–3 (Del. Super. Ct. June 30, 2009).   Focusing on the issue of whether to hold the car rental company liable for negligent entrustment, the court held that Virginia had the most significant relationship because Your Kar was a Virginia corporation, the driver was a Virginia resident, the rental contract was entered into in Virginia, and the rental car was registered and insured in Virginia.   Id. at *2.   The court held that

> [d]etermining the liability of a car rental agency for negligent entrustment on the basis of the law of a far away state where an accident happens to occur—as opposed to the law of the State where the entrustment occurred—would place an intolerable burden on the interstate system.   Predictability of the law is a key element of our interstate system.

Id. at *3.   The court noted that a car rental agency would not be able to predict what its legal obligations were vis-à-vis its rental agreements if it were subject to the "vicissitudes of judicial rulings throughout the fifty states."   Id.

The Supreme Court of Delaware cited the Your Kar case approvingly in Sinnott v. Thompson, 32 A.3d 351, 357–58 (Del. 2011).   In the Sinnott case, the court applied the most significant relationship test to conclude that Delaware law applied to a claim of negligent entrustment of an automobile.   Id. at 357–58. In that case, the driver was a Delaware resident, the owner of the vehicle (his mother) was a Delaware resident, the vehicle was insured and registered in

16

Delaware, the entrustment of the vehicle took place in Delaware, and the accident occurred in North Carolina, where the driver and the plaintiff were attending college.[6]  Id. at 352–54.   The plaintiff was a New York resident.   Id. The court acknowledged that North Carolina had an interest in holding negligent drivers accountable for their actions behind the wheel, but the court concluded that North Carolina's assertion of criminal law as to the driver's conduct was sufficient to satisfy North Carolina's interest.   Id. at 356–57.

With regard to the negligent entrustment claim, as with Cates and Your Kar, the court noted that the relationship which gave rise to the entrustment of the vehicle took place in Delaware.   Id. at 357–58.   The Delaware Supreme Court reasoned that the state of entrustment, plus the residence of both the driver and the owner, and the state in which the vehicle was insured and registered, all favored the application of Delaware law.   Id.   See also Dunn v. Madera, No. 7:05-CV-041, 2006 WL 3734210, at *3–6 (N.D. Tex. Dec. 18, 2006) (applying the most significant relationship test to conclude that Colorado law applied to a claim of negligent entrustment where the owner of the car lived in Colorado and the entrustment took place in Colorado, although the accident

_____

[6] The Supreme Court opinion states that the entrustment took place in Delaware.   Id. at 358.   However, one has to read the underlying opinion of the Delaware Superior Court to find out that Pepper, the vehicle owner, and Sinnot, the driver, were mother and son, respectively.   See Thompson ex rel. Neville-Thompson v. Sinnott, No. K09C-11-041, 2011 WL 1632344, at *1 (Del. Super. Ct. Apr. 26, 2011).

17

which injured the plaintiff occurred in Texas, where the plaintiff lived).   But see
Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 177–78 (3d Cir. 2005)
(applying New York law where a car was rented in Michigan to a Michigan
resident who drove the vehicle in New York for several days before getting into an
accident in Pennsylvania, causing injuries to his passenger who was a resident of
New York).

Here, all the significant relationships regarding the negligent entrustment
claim appear to be with Wyoming.   Trisha Mendonca, the person who lost her
life as a result of this accident, was a Wyoming resident.   Shelly Mendonca, her
mother and personal representative of Trisha's estate, is a Wyoming resident and
was appointed to her position by a Wyoming court.   At least two of the heirs of
Trisha's estate are Wyoming residents.   The execution of the rental agreement
and the entrustment of the vehicle took place in Wyoming between a company
(Corpat) doing business in Wyoming and a driver (Mr. Winckler) who was, at the
time of the accident, a resident of Wyoming.   The fact that the accident took
place in South Dakota was a mere fortuity.   The court therefore concludes that
Wyoming is the state with the most significant contacts to plaintiff's negligent
entrustment claim.

### 2.  Section Six Factors

Under § 6 of the Restatement, the court is to consider whether South
Dakota has a statutory directive on choice of law and, if not, the court must

18

consider the needs of the interstate and international systems; the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied.   See RESTATEMENT (SECOND) CONFLICTS OF LAWS § 6 (1971).

Here, South Dakota has no statutory directives as to choice of law—its choice of law rule is established by common law.   See Chambers v. Dakota Charter, Inc., 488 N.W.2d 63, 65 (S.D. 1992).   The needs of the interstate systems would certainly favor the application of Wyoming law for purposes of predictability, as stated by the court in the Your Kar case.   Henderson v. Your Kar Express Rentals, Inc., No. 06C-03-131, 2009 WL 1900395, at *3 (Del. Super. Ct. June 30, 2009).   Likewise, application of Wyoming law would protect the justified expectations of both Mr. Winckler and Corpat because Wyoming was the location where the rental agreement was entered into.

The relevant policies of South Dakota and Wyoming do not conflict with one another.   Under Wyoming law, a plaintiff must prove that the person entrusting the instrumentality was negligent because the person to be entrusted was incompetent, a fact that the entruster either knew or should have known under the circumstances.   Shafer v. TNT Well Serv., Inc., 285 P.3d 958, 967

19

(Wyo. 2012) (citing <u>Finch v. Canaday</u>, 297 P.2d 594, 598 (Wyo. 1956);
RESTATEMENT (SECOND) OF TORTS § 390 (1965)).   Wyoming looks to the
Restatement (Second) of Torts § 390 (1965) for guidance on negligent
entrustment claims.   <u>Id.</u>

South Dakota law on the tort of negligent entrustment is similar.   Liability
for negligent entrustment ensues under South Dakota law when the entruster
lends the instrumentality to one who the entruster knows to be incompetent,
reckless, or careless.   <u>Wilson v. Lewno</u>, 2001 SD 38, ¶ 4, 623 N.W.2d 494, 495.
South Dakota also looks to the Restatement (Second) Torts for guidance.   <u>See</u>
<u>Estate of Trobaugh v. Farmers Ins. Exch.</u>, 2001 SD 37, ¶¶ 33–35, 623 N.W.2d
497, 504–05.

The factors of certainty, predictability, uniformity of result and ease in the
determination and application of the law to be applied are neutral, as both South
Dakota law and Wyoming law are easily determined and applied.   Furthermore,
because they are so similar, there would be few cases where uniform results
would not occur under application of either state's law.   Accordingly, the court
concludes that Wyoming law applies to plaintiff's negligent entrustment claim
against Corpat.   In briefing subsequent to the filing of Corpat's summary
judgment motion, the parties were asked to address this choice of law issue.   All
parties filed briefs agreeing that Wyoming law should apply to plaintiff's negligent
entrustment claim.   <u>See</u> Docket Nos. 44–46.

**D.    Plaintiff's Negligent Entrustment Claim Against Corpat**

The elements of plaintiff's *prima facie* negligence claim are "(1) a duty, (2) a violation thereof, (3) which violation is the proximate cause of, (4) injury to the plaintiff."   Daily v. Bone, 906 P.2d 1039, 1043 (citations omitted) (Wyo. 1995). In a negligent entrustment claim under Wyoming law, the duty and breach elements require plaintiff to prove that Corpat entrusted a car to Mr. Winckler knowing that Mr. Winckler was incompetent, or under circumstances where Corpat should have known that Mr. Winckler was incompetent.   Shafer, 285 P.3d 958, 967 (Wyo. 2012); Moore v. Kiljander, 604 P.2d 204, 206 (Wyo. 1979); Finch v. Canaday, 297 P.2d 594, 598 (Wyo. 1956).   Wyoming looks to the Restatement (Second) Torts with regard to negligent entrustment law.   See Shafer, 285 P.3d at 967; Jack v. Enterprise Rent-A-Car Co., 899 P.2d 891, 894 (Wyo. 1995); Moore, 604 P.2d at 206.

Section 390 of the Restatement (Second) describes negligent entrustment as follows:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

See RESTATEMENT (SECOND) OF TORTS § 390 (1965).   "Liability for negligent entrustment arises from the act of entrustment, not the relationship of the

parties." <u>Shafer</u>, 285 P.3d at 967 (citations omitted).   In order to determine if a genuine issue of material fact exists as to a negligent entrustment claim, the court must analyze (1) whether Corpat supplied the vehicle to Mr. Winckler and (2) whether Corpat knew or should have known that Mr. Winckler was "likely to use the [vehicle] in a manner involving an unreasonable risk of harm."   <u>Id.</u>

Here, no party disputes that Corpat entrusted its vehicle to Mr. Winckler. So the dispute centers solely on the second factor.

What Corpat knew or should have known depends entirely on the appearance of Mr. Winckler when he presented himself to the Corpat desk to rent the vehicle and what Corpat's agent, Dakota Dayton, knew or observed about Mr. Winckler on that occasion.

First, it is clear that Mr. Dayton had no actual knowledge that Mr. Winckler had ingested marijuana immediately prior to renting the Corpat vehicle.   Moreover, Mr. Dayton had no actual knowledge that Mr. Winckler used marijuana generally.

Also, there are no facts or circumstances from which a reasonable person should have known that Mr. Winckler had just used marijuana before appearing at the Corpat desk.   He did not have red or glassy eyes.   He did not behave unusually.   At Mr. Dayton's deposition, no one asked him whether Mr. Winckler had any unusual odor about him, so there is no evidence of any odor indicating that Mr. Winckler recently ingested marijuana.   Similarly, no one asked

Mr. Dayton whether he observed any particles of marijuana on Mr. Winckler's person or clothing, so there is no evidence of any green leafy substance sticking to Mr. Winckler, which Mr. Dayton should have observed.   There are simply no facts from which a reasonable jury could determine that Dakota Dayton knew or should have known that Mr. Winckler had used marijuana immediately prior to renting the vehicle.

The only other ground urged by plaintiff in support of her negligent entrustment claim is the fact that Mr. Winckler had a removable splint on his right hand on the day he rented the Corpat vehicle.   With respect to the splint, Mr. Dayton did have actual knowledge that Mr. Winckler had some kind of injury to his hand because he saw the splint.   And Mr. Dayton made no inquiry about the splint or the functionality of Mr. Winckler's hand.   As Mr. Dayton explained, Mr. Winckler had driven his own vehicle to the Jackson Hole airport, so Mr. Dayton assumed that despite whatever was wrong with Mr. Winckler's hand, he was fully capable of driving.   The question is, then, whether the splint on Mr. Winckler's hand alone put Corpat on notice that it was entrusting its vehicle to one who was incompetent, or "likely to use the [vehicle] in a manner involving an unreasonable risk of harm."   Shafer, 285 P.3d at 967.

In the Shafer case, the Wyoming Supreme Court found sufficient facts to create a genuine issue of material fact, allowing plaintiffs to present their case to a jury and avoid summary judgment.   Id. at 968.   In that case, the defendant

23

corporation had entrusted a company-owned vehicle to one of its employees to drive.  Id. at 960–61.  The employee, while driving defendant's vehicle, crossed the centerline of a highway and collided head-on with the plaintiff's vehicle.  Id. The employee had controlled substances in his blood at the time of the accident. Id.

Although the defendant testified that it knew it should not hire any driver with a DUI conviction and that it drug tested its employees, the defendant gave conflicting testimony about whether the employee who caused the accident was ever actually drug tested by defendant.  Id. at 965.  Furthermore, after the defendant hired the employee, the defendant became aware that the employee was on probation.  Id.  However, the defendant never made inquiry about what offense the employee had committed that resulted in his being placed on probation.  Id.  In fact, the employee had two prior DUI convictions and a conviction for possession of a controlled substance.  Id.  The defendant's acknowledgement of "the relevance of DUI convictions to employee fitness, the existence of a drug-testing program at [the defendant's workplace], and [the employee's] prior DUI and controlled substance convictions" were sufficient to create a genuine issue of material fact preventing the entry of summary judgment in favor of the defendant.  Id. at 967.

Likewise, the Wyoming Supreme Court found the existence of a genuine issue of fact preventing summary judgment in Daily v. Bone, 906 P.2d 1039

24

(Wyo. 1995).   In that case, the defendant, an experienced snowmobiler with twenty years of experience, entrusted a high-performance snowmobile to his friend from North Carolina, who was a novice snowmobiler.   Id. at 1041–42. The novice came to an intersection between a snowmobile trail and a highway; he stopped, and then inexplicably drove his snowmobile directly into the plaintiff's path on the highway.   Id. at 1042.   Although the court noted that plaintiff had "a tough row to hoe on the issue of negligent entrustment," the court also noted that "competence may be measured by inexperience," so the novice's lack of experience was "sufficient to create an issue of fact for a jury."   Id. at 1045.

In Finch v. Canaday, the Wyoming Supreme Court affirmed a court trial verdict that was adverse to the plaintiff on a negligent entrustment claim.   Finch v. Canaday, 297 P.2d 594, 595, 601 (Wyo. 1956).   In that case, a car salesman employed by the defendant had entrusted a fifteen-year-old boy with an automobile to test drive.   Id. at 595.   The boy drove the vehicle at excessive speeds far above the speed limit, lost control of the vehicle, and injured the plaintiff.   Id.   The boy did not have a driver's license at the time the vehicle was entrusted to him and the salesman never made inquiry to ascertain this fact. Id.

The plaintiff did not base his negligent entrustment claim on the bare fact that the boy had no driver's license, but rather on the fact that the salesman should have inquired of the boy whether he had a driver's license and should

25

have otherwise investigated the boy's competency to drive.   Id. at 596.   Like

this case, there was no evidence that the salesman had actual knowledge that

the boy was incompetent to drive, so the case turned entirely on whether there

were facts from which the salesman *should have known* that the boy was

incompetent.   Id. at 598.

The court rejected the argument that negligence per se could arise from

the mere fact that the boy did not have a driver's license or from his youth alone.

Id. at 598, 600.   The question devolved to whether the salesman had reason to

know that the boy would drive the vehicle at reckless speeds.   Id. at 598–600.

The court emphasized that, before there can be liability for negligent

entrustment, the plaintiff's damages must have been caused by the

incompetency of the driver, which made the owner's act of entrusting the vehicle

to the driver actionable.   Id. at 598.   As the court stated, "the alleged negligence

in this case must result from the driver's *incompetency.*"   Id.   The court

reviewed the trial record and concluded that there was "nothing in the evidence

which shows there was any fact or circumstance apparent or occurring to warn

or apprise the salesman that the driver who wrecked the car was other than a

person competent to operate the same."   Id. at 600.   "Unless there are facts and

circumstances which might reasonably put the [entruster] on inquiry, he is not

obliged to test the competency and skill of [the driver] before entrusting him with

an instrumentality which, even though it may become highly dangerous by

26

reason of its improper use and operation, is not inherently dangerous." Id. (quoting Brown v. Fields, 83 P.2d 144, 146 (Or. 1938)).   Emphasizing that the question of the driver's competence and the salesman's negligence are questions of fact, the court affirmed the trial court's holding that there had been no negligent entrustment.   Id. at 597, 601.

In Jack v. Enterprise Rent-A-Car Co., the Wyoming Supreme Court affirmed the trial court's grant of summary judgment.   Jack v. Enterprise Rent-A-Car Co., 899 P.2d 891, 892 (Wyo. 1995).   In that case, a driver had rented a vehicle from Enterprise Rent-A-Car in California under a rental agreement that prohibited operating the vehicle outside of the state of California. Jack, 899 P.2d at 892.   The agreement also prohibited anyone from driving the vehicle except the driver who executed the rental agreement.   Id.   The driver then took the vehicle to Wyoming and allowed a third person to drive, both in violation of the rental agreement.   Id.   The third party crossed the centerline of the highway while driving and collided with plaintiffs, injuring them.   Id.

The plaintiffs sued Enterprise for, *inter alia*, negligent entrustment.   Id. at 893.   The Wyoming Supreme Court affirmed the trial court's issuance of summary judgment in favor of Enterprise, noting that there were no facts which would have put Enterprise on notice that the person who rented the vehicle was incompetent to drive, or that the person who rented the vehicle would allow someone else to drive.   Id. at 894–95.

27

In <u>Moore v. Kiljander</u>, the Wyoming Supreme Court again affirmed a grant of summary judgment on a negligent entrustment claim.   <u>Moore v. Kiljander</u>, 604 P.2d 204, 207 (Wyo. 1979).   In that case, the defendant owned a four-speed manual transmission pickup truck which he allowed a friend of his girlfriend's to drive while all three were in the truck.   <u>Id.</u> at 206.   The defendant believed the driver to be sixteen or seventeen years of age, which was old enough to obtain an unrestricted driver's license under Wyoming law, though the defendant never asked the driver her age or whether she did in fact have a driver's license.   <u>Id.</u> The driver was actually thirteen years old.   <u>Id.</u> The defendant did ask the driver if she knew how to drive a four-speed manual transmission, and the driver assured the defendant that she did because she had driven her father's manual transmission pickup truck.   <u>Id.</u>   The pickup then left the road and overturned while the girl was driving, killing both herself and the defendant's girlfriend.   <u>Id.</u>

The court noted that there were no facts in the record showing that the defendant had actual knowledge that the girl was an incompetent driver, or any facts from which the defendant could be said to have been on notice of that fact. <u>Id.</u>   The defendant testified that he thought the girl was sixteen or seventeen years old; plaintiff never contradicted this testimony as it perhaps could have done by affidavit suggesting that the girl in fact did not appear to be sixteen or seventeen but in fact looked like a typical thirteen-year-old.   <u>Id.</u>   On this record, the court held that summary judgment was proper.   <u>Id.</u> at 207.

The court concludes that this case, like <u>Jack</u> and <u>Moore</u>, is an appropriate case for summary judgment.   First, the court notes that Mr. Winckler's marijuana use is a nonissue, a red herring dragged across the path of this lawsuit.   Corpat neither had actual knowledge of the fact of Mr. Winckler's ingestion of marijuana nor were there any facts or circumstances which would have put Corpat on notice of that fact.   There is no evidence of an unusual odor about Mr. Winckler, red or glassy eyes, unusual demeanor or speech, or irregular motor movements.   There is no testimony about any green leafy specks on his clothing or person.   And there is no evidence in the record that he had a reputation in the community as a marijuana user or a person of intemperate habits or even that he associated with such persons.   Furthermore, Mr. Winckler's use of marijuana occurred more than thirteen hours prior to the accident and Mr. Winckler passed all field sobriety tests put to him by law enforcement immediately after the accident.   Plaintiff has adduced no evidence showing a causal link between Mr. Winckler's earlier ingestion of marijuana and the accident.[7]

---

[7] Plaintiff also asserts that Corpat was negligent in failing to train Mr. Dayton in how to detect whether a prospective driver/renter was under the influence of marijuana.   However, plaintiff never puts forth any facts to support this theory of liability.   Plaintiff does not describe what type of training Corpat should have given to Mr. Dayton.   More importantly, plaintiff never asserts any facts indicative of Mr. Winckler's recent marijuana ingestion which Mr. Dayton, had he been properly trained, would have detected.

Second, the condition of Mr. Winckler's hand is also insufficient to put Corpat on notice of his incompetency to drive.   The splint was removable, thus suggesting a less severe temporary or impermanent injury.   Mr. Winckler, in fact, drove himself to the Corpat desk at the Jackson Hole airport immediately prior to renting the Impala from Corpat.   And Mr. Winckler testified that he in fact had the use of his hand, although he could not "go crazy" with it.

But more fatally for plaintiff, there is no suggestion by plaintiff of any causation between the accident and the splint on Mr. Winckler's hand.   There are two suggestions as to why the accident occurred:   the highway patrol officer's inference that Mr. Winckler fell asleep at the wheel and Mr. Winckler's suggestion that he lost control because something on the car malfunctioned (perhaps a rear tire popping).   Mr. Winckler did not testify that, if his right hand had been uninjured and unsplinted, he could have controlled the vehicle. Plaintiff has submitted no affidavit that would support that assertion.   And nowhere in the record is there any shred of evidence that Mr. Winckler lost control of the Corpat vehicle because his right hand was injured and he could not drive the car properly.

As the comments to § 390 of the Restatement (Second) caution, an entruster of a chattel "is liable if, but only if, his conduct is the legal cause of the bodily harm complained of."   See RESTATEMENT (SECOND) TORTS § 390, cmt. c (1965); see also Finch v. Canaday, 297 P.2d 594, 598 (Wyo. 1956), (stating "that

30

the alleged negligence in this case must result from the driver's *incompetency*.").
An example helps illustrate the principle.   If A lends his vehicle to B, knowing
that B suffers from epilepsy and frequently has seizures, A has negligently
entrusted the vehicle to B.   But if B loses control of the vehicle due to driving it
above the speed limit and injures C, A is not liable to C for negligent entrustment
because the accident was not caused by B's epilepsy (the incompetency), but
rather by B's driving in excess of the speed limit.   In such a case, A's breach of
duty was not the cause of C's injury—B did not injure C due to suffering an
epileptic seizure while driving.

It is the plaintiff's burden to show facts in response to Corpat's motion for
summary judgment, by affidavit or other evidence, that Corpat knew or had
reason to know that Mr. Winckler was incompetent to drive at the time Corpat
entrusted him with its vehicle.   See FED. R. CIV. P. 56(c); Finch, 297 P.2d at 600.
The elements of plaintiff's *prima facie* negligence claim are "(1) a duty, (2) a
violation thereof, (3) which violation is the proximate cause of, (4) injury to the
plaintiff."   Daily v. Bone, 906 P.2d 1039, 1043 (Wyo. 1995) (citations omitted).
Although the court recognizes that negligence is the quintessential question of
fact, which is usually reserved for the jury, there must be some evidence from
which a reasonable jury could conclude that the presence of the removable splint
on Mr. Winckler's hand put Corpat on notice that he was incompetent to drive,

31

and that the condition of Mr. Winckler's hand was the proximate cause of Trisha Mendonca's death.

Alternatively, plaintiff could survive summary judgment by showing that there were facts from which Corpat should have known that Mr. Winckler was under the influence of marijuana when he rented the car and that his marijuana ingestion contributed to the accident.   The plaintiff has failed to contravene Corpat's showing as to duty, breach of duty, and proximate causation on both of these possible bases of liability.   Accordingly, summary judgment should issue in favor of Corpat.

## CONCLUSION

Based on the foregoing law and analysis, this court respectfully recommends that the motion for summary judgment [Docket No. 30] by defendant Corpat, Inc. d/b/a Alamo/National Car Rental should be granted and that judgment be issued in Corpat's favor.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained.   See Fed. R. Civ. P. 72(b). A party may respond to another party's objections within fourteen (14) days of being served with a copy.   Id.   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.   Id.   Objections must be timely

and specific.   Timely, specific objections to the findings and conclusions on the summary judgment motion will be reviewed *de novo* by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990) (per curiam); Nash v. Black, 781 F.2d 665 (8th Cir. 1986); see also 28 U.S.C. § 636(b)(1)(B).

Dated December 11, 2013.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE